IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| EDDIE LEE COTTON, : | |
| : | |
| Plaintiff, : | |
| : | CASE NO.: 1:14-CV-00114 (LJA) |
| v. : | |
| : | |
| BEN HILL COUNTY, : | |
| SHERIFF DEPARTMENT OF : | |
| BEN HILL COUNTY : | |
| : | |
| Defendants. : | |
| : | |

## ORDER

Before the Court are Motions for Summary Judgment filed by Defendant Ben Hill County, Georgia (the "County") and Defendant Sheriff's Department of Ben Hill County, Georgia (the "Sheriff's Department") (collectively, "Defendants"). (Docs. 17 and 22). For the reasons that follow, Defendants' Motions for Summary Judgment, (Docs. 17 and 22), are **GRANTED**.

## FACTUAL BACKGROUND[1]

This action concerns the seizure of Plaintiff's cattle for alleged animal cruelty and roaming at large. On July 25, 2014, the County's Animal Control Department received complaints that Plaintiff's cattle were "loose and roaming free." (Doc. 22-3 ¶ 3). Later that day, Jason Miller, Director of Animal Control for the County, drove by Plaintiff's property and observed that "the fence was in disrepair and that one of the cows, a bull, was tied to a tree with a rope and could not reach water." (*Id.* ¶ 8). Miller also observed that "[t]he rope that was tied around the bull's neck had torn the skin on the bull's neck and that the wound

---

[1] The relevant facts are derived from Plaintiff's Complaint (Doc. 1); Defendants' Answers (Docs. 6 and 7); Plaintiff's Motion to Return Property (Doc. 2); Defendants' Response to Plaintiff's Motion to Return Property (Docs. 8 and 9); Defendants' Motions for Summary Judgment (Docs. 17 and 22); Defendants' Statement of Undisputed Material Facts

1

appeared to be infected." (*Id.* ¶ 9).  Mr. Miller called John D. Bishop, III, Chief Deputy of the Sheriff's Department, informed him of the complaints and advised Chief Deputy Bishop that he planned on calling the local stockyard for assistance with impounding Plaintiff's cattle. (Doc. 17-2 ¶ 3).  Chief Deputy Bishop informed Mr. Miller that no employee of the Sheriff's Department would participate in retrieving or impounding Plaintiff's cattle, given the pending litigation Plaintiff initiated against the Sheriff's Department regarding the seizure of Plaintiff's cattle in March, 2012, for neglect.  (*Id.* ¶ 3).  Plaintiff admits that on or about July 25, 2014, his cattle were at large beyond the confines of his property.  (Doc. 19 at 73:9-74:12).  He also admits that he had not one but two cows tied up when Animal Control agents arrived at his property on July 25, 2014.  (Doc. 19 at 88:3-8; *see also* Doc. 25-1 ¶ 8).

In the late afternoon or early evening of July 25, 2014, Ryan Popp, a deputy of the Sheriff's Department was dispatched to Plaintiff's property in response to a 911 call from an unidentified individual at the Ben Hill County Animal Control Department who reported that some of Plaintiff's cattle were roaming the area outside Plaintiff's property and that others on his property were tied up.  (*Id.*)  In the presence of Plaintiff and Deputy Popp, Rex Busbin and unnamed individuals from the local stockyard began rounding up Plaintiff's cattle on Plaintiff's property and outside his property.  (Doc. 19 at 73:16-74:18).  Deputy Popp did not participate in rounding up Plaintiff's cattle on July 25, 2014; nor did he take possession of them.  (Docs. 19 at 65:3-18; 17-1 ¶¶ 5, 7; 17-4 ¶ 4).  Unable to capture all of Plaintiff's cattle on July 25, 2016, Mr. Busbin decided to end his efforts and return the following day.  (Doc. 17-4 ¶ 3).

On July 26, 2014, around 6:23 a.m., Elex Washington, a deputy of the Sheriff's Department was dispatched to Plaintiff's property in response to a 911 call requesting that a Sheriff's Deputy meet Mr. Busbin at Plaintiff's property.  (Doc. 17-5).  When Deputy Washington arrived, Mr. Busbin advised him that he required Deputy Washington's presence to help avoid any altercations with Plaintiff.  (*Id.*)  That morning, three other unidentified men assisted Mr. Busbin in capturing the remaining cattle.  (*Id.*)  Deputy Washington did not participate in capturing Plaintiff's cattle on July 26, 2014; nor did he take possession of them.

---

(Docs. 17-6 and 22-1); Plaintiff's Deposition Transcript (Doc. 19); the Affidavit of Jason Miller (Doc. 22-3); and the record

(Docs. 19 at 65:3-18; 17-1 ¶¶ 6, 7; 17-5 ¶ 3).

## PROCEDURAL BACKGROUND

On July 30, 2014, Plaintiff, proceeding *pro se*, commenced this action by filing a Complaint asserting claims for deprivation of property, in violation of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, and in violation of the Constitution of the State of Georgia; and by filing a Motion to Return Property. (Docs. 1 and 2). In his Complaint, Plaintiff seeks compensatory damages "in an amount exceeding $75,000" and unspecified punitive damages. (Doc. 1 at 6). On September 23, 2014, Defendants responded to Plaintiff's Motion to Return Property. (Docs. 8 and 9). On October 22, 2014, the Court entered an Order denying Plaintiff's Motion to Return Property. (Doc. 15). On June 16, 2015, the Sheriff's Department filed its Motion for Summary Judgment. (Doc. 17). On July 2, 2015, the County filed its Motion for Summary Judgment. (Doc. 22). On July 17, 2015, and July 30, 2015, Plaintiff responded to Defendants' Motions for Summary Judgment. (Docs. 24 and 25). On July 31, 2015, the Sheriff's Department replied. (Doc. 26). On August 27, 2015, the County replied. (Doc. 28). As such, Defendants' Motions for Summary Judgment are now ripe for review. *See* M.D. Ga. L.R. 7.3.1(a).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v.*

in this case.

*Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  An issue of fact "is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

  The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009).  The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24.  Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586 (citations and internal quotations omitted).  Instead, the nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form") (quotation omitted).  Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

  On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.  However, the Court must grant summary

judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

To assist in meeting the Parties' respective burdens, Local Rule 56 requires the movant to attach to its motion for summary judgment a separate and concise statement of material facts to which the movant contends there is no genuine issue to be tried. M.D. Ga. L.R. 56. The non-movant must then respond "to each of the movant's number material facts." *Id.* "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." *Id.* Moreover, the "respondent to a motion for summary judgment may not assert insufficient knowledge to admit or deny a material fact asserted by the movant unless the respondent has complied with the provisions of Rule 56(d) of the Federal Rules of Civil Procedure." *Id.*

Plaintiff's responses to Defendants' Statements of Material Facts largely consist of unsupported and conclusory assertions without any citation to the record. (*See* Docs. 24-1 and 25-1). To the extent that Plaintiff has failed to comply with Local Rule 56, such material facts are deemed admitted unless otherwise inappropriate. The Court, however, "cannot grant a motion for summary judgment based on default or as a sanction for failure to properly respond." *United States v. Delbridge*, No. 1:06-CV-110 (WLS), 2008 WL 1869867, at *3 (M.D. Ga. Feb. 22, 2008) (citing *Trustees of Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Employers v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1040 (11th Cir. 2004)). Instead, the Court must undertake an independent review of "the evidentiary materials submitted in support of the motion" to ensure that the Defendants have met their burden of demonstrating the absence of a genuine issue of material fact. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004); *see also Delbridge*, 2008 WL 1869867, at *3 (finding that the "Court must make an independent review of the record," even if the non-movant fails to respond to the statement of material facts).

**DISCUSSION**

I. <u>Federal Claims</u>

   A. **Plaintiff's Claims against Ben Hill County fail as a matter of law**

Plaintiff alleges that the County is liable under § 1983 for violating his rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment and the Fourth Amendment for impounding his cattle.  It is well-settled that "[m]unicipalities and local government units cannot be found liable under § 1983 under a *respondeat superior* or vicarious liability theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  "Instead, to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  "A plaintiff . . . has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citations omitted).

Plaintiff's § 1983 claims against the County fail because he points to no record evidence demonstrating that any alleged violations of his constitutional rights were the result of an official policy, custom or practice of the County or that the County acted with deliberate indifference to these rights.  Plaintiff alleges that the County's "unlawful seizure of Plaintiff's cattle without due notice violated his rights to due process and equal protection under . . . the Fourteenth Amendment to the United States Constitution. . . ."  (Doc. 1 ¶ 7). Plaintiff further contends that the County violated his Fourth Amendment rights when Rex Busbin went "onto [Plaintiff's] property and seized and impounded [his] livestock without having any [w]arrant and with no notice given to [him]."  (*Id.* ¶ 3).

In support of his constitutional claims, Plaintiff cites to O.C.G.A. § 4-11-9, which permits any authorized government official to "enter upon any public or private property at any time for the purpose of inspecting the business premises of any pet dealer or any animal

6

shelter, kennel, or stable and the dogs, cats, equines, or other animals housed at such facility to determine if such facility is licensed. . . ." (*See* Doc. 25-2 at 5-6). However, O.C.G.A. § 4-11-9 is inapposite to the Court's inquiry because Plaintiff does not allege that he is a pet dealer or operator of a kennel, stable, or animal shelter. (*See* O.C.G.A. 4-11-3). Plaintiff also cites to O.C.G.A. § 27-4-263, titled "Inspections of Premises of Registered Seller or Producer of Domestic Fish." Likewise, O.C.G.A. § 27-4-263 is inapposite because Plaintiff does not allege that he is a registered seller or producer of domestic fish nor that any alleged unlawful conduct of the County or its agents relate to domestic fish in Plaintiff's custody or control. The only other support offered for Plaintiff's his constitutional claims consist of conclusory allegations. However, "conclusory allegations without specific supporting facts have no probative value." Meyer*s v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013). Accordingly, Plaintiff has failed to carry his burden of presenting evidence that Defendant County impounded his cattle pursuant to a custom or policy that constituted deliberate indifference to his Constitutional rights.

Furthermore, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Id.* Thus, "[e]ven assuming the continued retention of [Plaintiff's cattle] is wrongful, no procedural due process violation has occurred if a meaningful postdeprivation remedy for the loss is available." *Case v. Eslinger*, 555 F.3d 1317, 1331 (11th Cir. 2009). "The state of Georgia has created a civil cause of action for the wrongful conversion of personal property," *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (citing O.C.G.A. § 51-10-1), and the Eleventh Circuit has recognized that "[t]his statutory provision covers the unauthorized seizure of personal property by [state officials]. Therefore, the state has provided an adequate postdeprivation remedy when a plaintiff claims that the state has retained his property without due process of law," *id.* (quoting *Byrd v. Stewart*, 811 F.2d 554, 555 n. 1 (11th Cir. 1987)). Accordingly,

7

"[b]ecause [Plaintiff] has had access to an adequate postdeprivation remedy, no procedural due process violation has occurred." *Id.*; *see also Burlison v. Rogers*, 311 F. App'x 207, 208 (11th Cir. 2008) (finding that "as long as some adequate postdeprivation remedy is available, no due process violation has occurred.").

Likewise, Plaintiff has also failed to establish that the County is liability for violating his rights under the Equal Protection Clause of the Fourteenth Amendment. A plaintiff bringing an equal protection claim under the Fourteenth Amendment must prove either that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment[,]" *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), or that he "was treated differently than similarly situated persons [and] the defendant unequally applied [a] facially neutral statute for the purpose of discriminating against [him]" *Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996). Here, Plaintiff does not allege or offer evidence that the County has treated him differently than similarly situated individuals, nor has he alleged that the County has unequally applied a facially neutral statute in an effort to discriminate against him. Accordingly, Plaintiff's equal protection claim under the Fourteenth Amendment fails as a matter of law.

With regard to Plaintiff's claim for a Fourth Amendment violation, even if the County's impoundment of Plaintiff's cattle constituted a seizure subject to Fourth Amendment protections, the County's conduct was reasonable. A plaintiff bringing a claim under the Fourth Amendment must prove that their property was seized and that the seizure was not reasonable. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1281 (11th Cir. 2016) (citing *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 71 (1992)). It is undisputed that Plaintiff's cattle were seized within the meaning of the Fourth Amendment. Several Georgia statutes and Ben Hill County ordinance sections, however, provide grounds for a state actor to seize a citizen's livestock if it reasonably believes that the animals have suffered abuse or are at large. Georgia Code Section 4-3-4 provides, [i]t shall be the duty of the sheriff, his deputies, *or any other county law enforcement officer* to impound livestock found to be running at large or straying." O.C.G.A. 4-3-4(a) (emphasis added). Ben Hill County Ordinance Sections 10-150(1) and 150(2) state, "an animal control officer or a police officer may impound and confine to an animal shelter

any . . . animal at large [or] [a]ny animal constituting a public nuisance or considered a danger to the public[.]" Georgia Code Section 16-12-4(b) states that "a[] person commits the offense of cruelty to animals when he . . . "[c]auses physical pain, suffering, or death to an animal by any unjustifiable act or omission. . . ." O.C.G.A. § 16-12-4(b). Ben Hill County Ordinance Section 10-150(6) also permits an animal control officer to impound "[a]ny animal that is reasonably believed to have been abused or neglected."

Neither O.C.G.A §§ 4-3-4, 16-12-4, nor Ben Hill County Ordinance 10-150 requires agents of the County to obtain a warrant before impounding cattle. Record evidence indicates that, on July 25, 2014, the County's Animal Control Department received complaints that Plaintiff's cattle were "loose and roaming free[,]" and the Director of Animal Control for Defendant County observed that the fence was in disrepair, and a bull was obviously being mistreated. (Doc. 22-3 ¶¶ 3, 8, 9). Further, Plaintiff points to no evidence in the record to controvert the County's evidence indicating that one of his bulls suffered rope burns on its neck on July 25, 2014. Plaintiff's unsworn statements to the contrary do not suffice to create genuine issues of material fact. *See, e.g., Carr v. Tatangelo*, 338 F.3d 1259, 1272 n.26 (11th Cir. 2003) (holding that unsworn statements do not meet the requirements of Rule 56 and cannot be considered by a district court in ruling on a summary judgment motion.) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17 (1970)). As such, the record does not present sufficient evidence for a reasonable jury to find that the County's warrantless seizure of Plaintiff's cattle was unreasonable.

### B. Plaintiff's Claims against Sheriff's Department of Hill County fail as a matter of law

Plaintiff also brings § 1983 claims alleging violations of his Fourteenth Amendment equal protection and due process rights against the Sheriff's Department of Ben Hill County and Sheriff McLemore in his official capacity and individual capacity.

Plaintiff's claims against the Sheriff's Department fail as a matter of law because it is not a legal entity subject to suit under Georgia law. The "[c]apacity to sue or be sued is determined . . . by the law of the state where the [district] court is located. . . ." Fed. R. Civ. P. 17(b)(3). Thus, Georgia law governs this action. Under Georgia law, "[i]n every suit there

9

must be a legal entity as the real plaintiff and the real defendant." *Cravey v. Southeastern Underwriters Ass'n*, 214 Ga. 450, 453 (1958).  Georgia recognizes only three classes of legal entities: "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasiartificial persons as the law recognizes as being capable to sue." (*Id.*) (citing *Parker v. Bd. of Education of Sumter County, 209 Ga.* 5, 70 S.E. 2d 369 (1952)).  "Sheriff's departments . . . are not usually considered legal entities subject to suit" under § 1983.  *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992); *see also Lawal v. Fowler*, 196 F. App'x 765, 768 (11th Cir. 2006) (holding, "[b]ecause '[s]heriff's departments and police departments are not usually considered legal entities subject to suit,' we see no error in the district court's decision that Lawal failed to state a claim against the Douglas County Sheriff's Department." (citing *Dean*, 951 F.2d at 1214)).  Accordingly, because the Sheriff's Department is not a legal entity capable of being sued under § 1983, as a matter of law, it is not a proper party to this action.

### C. Defendant Sheriff McLemore

Plaintiff's § 1983 claim against Sheriff McLemore in his individual capacity fail for the same reasons that his claim against the County—Sherrif McLemore's employer—fails.  A § 1983 claim against an official in his individual capacity is "simply another way of pleading an action against an entity of which the officer is an agent." *Busby* 931 F.2d at 776 (internal quotation marks omitted); *see also Flowers v. Troup County, Ga. Sch. Dist.*, 1 F. Supp. 3d 1363, 1369 (N.D. Ga. 2014).  Plaintiff's claim against Sheriff McLemore in his individual capacity fails because Plaintiff has not demonstrated that the County has an official policy, custom, or practice of that violates the Fourteenth Amendment.

Plaintiff's claim against Sheriff McLemore in his official capacity also fails because he has not shown that Sheriff McLemore is subject to supervisory liability under § 1983.  "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley*, 193 F.3d at 1269).  Rather, "supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional

deprivation." *Id.* The necessary causal connection can be established by showing that: (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) the facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so. *Id.* "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *West v. Tillman*, 496 F.3d 1321, 1329 (11th Cir. 2007) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)).

Plaintiff fails to establish supervisory liability under § 1983 because the record evidence does not show that Sheriff McLemore personally participated in the seizure and impoundment of Plaintiff's cattle or that a causal relationship exists between Sheriff McLemore's actions and the constitutional violations Plaintiff alleges. Plaintiff argues that "[t]he decision to seized [sic] and impound plaintiff [sic] cattle on July 25, 26, 2014, was Sheriff McLemore's as the evidence shows." (Doc. 24-2 at 10-11). However, it is undisputed that Sheriff McLemore was not present when Rex Busbin seized and impounded Plaintiff's cattle on July 25, 2014 and July 26, 2014. Further, there is no evidence that Deputy Popp or Deputy Washington participated in the seizure or impoundment of Plaintiff's cattle. Rather, the evidence in the record demonstrates that the decision to impound was made by the County Animal Control Department who enlisted men from the local stockyard to assist in the seizure. (Docs. 1 at 3; 22-1 at 7-11; 22-3 at 2-11). That Deputy Popp and Deputy Washington were present while Plaintiff's cattle were seized and impounded is not sufficient to support an inference that Sheriff McLemore directed Deputy Popp or Deputy Washington to act unlawfully or that he knew that either would act unlawfully, but failed to stop them from doing so.

Similarly, Plaintiff has failed to offer any evidence showing a history of abuse by the Sheriff's Department, that Sheriff McLemore had a policy or custom that allegedly caused the seizure and impoundment of the cattle, or that Sheriff McLemore was deliberately indifferent

to his constitutional rights. As the Supreme Court has stated, "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997).  Plaintiff contends that Busbin "could never have seized and impounded plaintiff's cattle without the Sheriff Deputy being present at the authorization of Sheriff McLemore through his policy and procedural guidelines s[e]t by Sheriff McLemore." (Doc. 24-2 at 11).  Plaintiff has not identified any such specific policy or procedure.  Plaintiff's conclusory allegations are insufficient to meet the "extremely rigorous" standard necessary to impose supervisory liability. *Cotton*, 749 F.3d at 1360; *see generally Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.").  Accordingly, Plaintiff's claims under § 1983 against Defendant Sheriff McLemore in his official capacity fail as a matter of law because Plaintiff fails to establish supervisory liability against Sheriff McLemore.

## II. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State Claims

Once a plaintiff's federal claims are dismissed, "there remains no independent original federal jurisdiction to support the Court's exercise of supplemental jurisdiction over the state claims against Defendant." *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997).  Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction.  "The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004).  "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Baggett*, 117 F.3d at 1353 (citing P*almer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1569 (11th Cir. 1994).  The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been

dismissed prior to trial." *Raney*, 70 F.3d at 1089.

Plaintiff's remaining state law claims are dismissed to allow Plaintiff to pursue his claims in a more appropriate forum. The state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so. In addition, Section 1367(d) gives "the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction," thereby removing "the principal reason for retaining a case in federal court when the federal claim belatedly disappears." *Personalized Media Commc'ns, LLC v. Scientific–Atlantic, Inc.*, 493 F. App'x 78, 82 n.1 (11th Cir. 2012); *see also* 28 U.S.C. § 1367(d) (providing that state law claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"). While it may be convenient for the Parties to continue litigating this case in this Court, neither judicial economy nor fairness to other litigants supports retaining jurisdiction over Plaintiff's state law claims while delaying justice in other cases where the Court retains original jurisdiction.

## CONCLUSION

In light of the foregoing, Defendants' Motions for Summary Judgment, (Docs. 17 and 22), on Plaintiff's § 1983 claims are **GRANTED**. Furthermore, Plaintiff's remaining state law claims are **DISMISSED without prejudice.**

**SO ORDERED**, this   26th   day of September, 2016.

  /s/ Leslie J. Abrams
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**